## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JJB PROPERTIES, L.L.C., and Oklahoma Limited Liability Company; JARRY JONES, an individual; LAURA JONES, an individual; JERRY WHITTINGTON, an individual; and BARBARA WHITTINGTON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S LONDON, subscribing to Policy # 000200/0800, <br><br> Defendant. | No. 09-CV-586-JHP-FHM |

## ORDER

Now before the Court is Defendant's Motion for Summary Judgment, or in the Alternative to Stay Proceedings and Compel Arbitration, Plaintiff's Response to said motion, and Defendant's Reply. The instant case involves a disputed contract claim for property damage to Plaintiffs' homes. Defendant asserts the only issue remaining between the parties is the amount of damages sustained in the covered loss and claim the appraisal process is a condition precedent to filing a lawsuit. Plaintiffs contend, however, the undisputed evidence and reasonable inferences from the disputed facts show Defendant insurer Certain Underwriters at Lloyds London waived its right to appraisal, breached its contractual obligations to Plaintiffs and committed bad faith for failure to reasonably investigate, evaluate and timely pay Plaintiffs' claim.

**INTRODUCTION**

Plaintiffs own 231 properties located in Tulsa, Oklahoma and the surrounding communities. All of these properties were insured under a single Commercial Insurance Policy issued by Defendant. This All Risk Replacement policy was in effect from February 26, 2008 through February 26, 2009. On April 7, 2008, a widespread hailstorm damaged most of Plaintiffs' properties covered under Defendant's policy.

A dispute first arose when Defendant's agents and adjusters refused to inspect all Plaintiffs' damaged properties with Plaintiffs' roofing contractor. Plaintiffs claim Defendant's refusal made determining the proper scope of damages on the nearly two hundred damaged homes impossible because the cost of damages could not be determined until the proper scope of damages had been ascertained.

Plaintiffs contend they made numerous attempts to reconcile the $1,226,742.00 repair cost difference with Defendant, and provided Defendant with copies of all scopes, measurements and line-item estimates of the damaged properties. Plaintiffs assert that despite repeated requests, Defendant and its adjusters unreasonably refused to provide copies of their scope of damages and never worked with Plaintiffs to come to an "agreed" scope of loss. "To this day, Defendant still refuses to provide Plaintiffs with a detailed scope to help determine the proper repair costs." (Plaintiffs' Br.at 2).

Defendant's adjuster agreed that 39 properties required roof replacements. Defendant paid two separate undisputed actual cash value payments (based solely on Defendant's scopes and estimates) with a 23.6% deduction for recoverable depreciation (holdback). Plaintiffs used these funds to repair these specific 39 properties. Plaintiffs provided copies of all scopes,

measurements, estimates, invoices and supplements to Defendant as each property was repaired. Plaintiff alleges Defendant refused to inspect the completed repairs.  "To this day, Defendant also unreasonably refused to refund the undisputed replacement cost recoverable depreciation (holdback)." (Plaintiffs' Br.at 3).

Plaintiffs assert that under the terms of the policy, Defendant is obligated to refund the 23.6% holdback to Plaintiffs because Plaintiffs completed the agreed upon repairs and provided proof within 180 days of receiving the actual cash value payment.  Therefore, Plaintiffs argue Defendant is in breach of contract and its acts constitute bad faith. Further, Plaintiffs contend Defendant's unreasonable failure to refund the holdback to Plaintiffs has made it impossible for Plaintiffs to continue to repair the other damaged properties and mitigate their damages. Finally, Plaintiffs argue that contrary to Defendant's assertions, Plaintiffs filed a complaint for breach of contract and breach of the covenant of good faith and fair dealing on September 10, 2009, before receiving notice of Defendant's demand for appraisal.

**BACKGROUND**

The uncontroverted record discloses that Defendant issued Policy No. 000200/800 ("Policy") to JJB Properties, LLC effective from February 26, 2008 through February 26, 2009. Plaintiffs Jarry Jones, Laura Jones, Jerry Whittington and Barbara Whittington  were added as named insureds by an endorsement to the Policy.  The policy is an All Risk Replacement Policy which has a location specific deductible for windstorm or hail of $3,500.00 per insured property, subject to an aggregate of $40,000.00 per occurrence.  See Affidavit of Barbara Whittington, paragraph 2, attached as Plaintiffs' Exhibit A.  The Policy also contains an Appraisal Provision,

which states " ...If there is an appraisal, we will still retain our right to deny the claim."

On April 7, 2008, a large hail storm came through Tulsa, Oklahoma and surrounding areas. After the storm, Plaintiffs received numerous reports of roof damage from tenants of their insured properties. See Affidavit of Barbara Whittington, paragraph 4, attached as Plaintiffs' Exhibit A.

Plaintiff Barbara Whittington attempted to hire a local roofer to inspect the damage to Plaintiffs' properties but due to the massive number of hail-damaged homes in the Tulsa area, she was unable to find a roofer to complete the inspections. See Affidavit of Barbara Whittington, paragraph 4, attached as Plaintiffs' Exhibit A. Plaintiff Barbara Whittington contacted DR Restoration, a general contractor specializing in storm-related restoration and repair, to inspect some of Plaintiffs' insured properties for damage in order to determine if it was necessary to file a claim with Defendant Certain Underwriters of Lloyds London. See Affidavit of Barbara Whittington, paragraph 5, attached as Plaintiffs' Exhibit A.

After DR Restoration determined that numerous properties owned by Plaintiffs had sustained covered wind and hail damage, Plaintiff Barbara Whittington hired DR Restoration to inspect all of Plaintiffs' properties and assist in working with the Defendant to come to an agreed scope of loss so that proper and necessary repairs could be made to Plaintiffs' insured properties. See Affidavit of Barbara Whittington, paragraph 6 attached as Plaintiffs' Exhibit A. Mary Elizabeth Yagelski, an employee of DR Restoration, completed the line-item estimates of Plaintiffs' properties. Ms. Yagelski provided Defendant Certain Underwriters of Lloyds of London with copies of diagrams, measurements and line item estimates of the damaged property. See Affidavit of Mary Elizabeth Yagelski, Paragraph 3, attached as Plaintiffs' Exhibit C.

Defendant assigned the adjustment of Plaintiffs' claim to Danny J. Brown, an independent

adjuster with Crawford Global Technical services from Richland, Texas. See Affidavit of Barbara Whittington, paragraph 7, attached as Plaintiffs' Exhibit A. In an effort to reach an agreed upon scope of covered damages, Plaintiff Barbara Whittington asked Defendant's agent, adjuster Danny Brown to inspect the covered properties with Plaintiffs' contractor, DR Restoration. Plaintiffs claim Mr. Brown refused, stated he ran his own schedule, requested copies of all of Plaintiffs' estimates, and said he would inspect the houses on his own time-line. See Affidavit of Barbara Whittington, paragraph 8, attached as Plaintiffs' Exhibit A.

Plaintiffs further allege that after Defendant's adjuster refused to meet with Plaintiffs' contractor, and initially refused to pay for the removal of additional layers of shingles on the roofs that he agreed were totaled due to hail damage. Defendant's adjuster claimed the policy only allowed for the removal and replacement of one layer of roofing material. Mr. Brown did not change his position until after he had numerous discussions with Plaintiffs' contractor. See Affidavit of Barbara Whittington, paragraph 9, attached as Plaintiffs' Exhibit A. Plaintiffs argue Defendant continued to mishandle Plaintiffs' claim when its adjuster unreasonably refused to provide estimates for covered damages including damage to paint, siding, and metal gutters. Defendant's adjuster stated that he could not include those types of damages because he was only authorized by Defendant Lloyds to provide estimates of damage to the roofs. See Affidavit of Barbara Whittington paragraph 10, attached as Plaintiffs' Exhibit A.

Thereafter, Plaintiffs claim Defendant's adjuster continued to mishandle Plaintiffs' claim because he refused to estimate and price the replacement of flashings on roofs that he admitted were damaged and needed to be replaced. Plaintiffs contend, "[a] roof cannot properly be replaced if the flashing is not replaced as well, otherwise the roof is likely to leak and the contractor will not provide a warranty." See Affidavit of Barbara Whittington, paragraph 11,

attached as Plaintiffs' Exhibit A.

In an effort to try and resolve the issues that were delaying the claim, Plaintiff Barbara Whittington met with her contractor and Defendant's adjuster. This meeting took place at Plaintiff Barbara Whittington's office. During the meeting, Plaintiff Barbara Whittington and the adjustor disagreed as to whether there was hail damage to one of Plaintiffs' properties in Mannford, Oklahoma. After some discussion Plaintiff claims it became apparent the adjuster had inspected and photographed the wrong house. See Affidavit of Barbara Whittington, paragraph 12, attached as Plaintiffs' Exhibit A. Further, during this meeting the adjustor stated the current Xactimate (claims estimating software used by the insurance repair industry) cost per square of shingles was too high, and claimed he had a local roofer in Tulsa, Oklahoma that could perform the work at a lower cost. In the presence of the adjustor, Plaintiff telephoned the roofer identified by the adjuster, who opined he could not do the work for the price being advocated the adjuster. The roofer stated the price given by Plaintiffs' contractor, DR Restoration was accurate. The adjuster is then alleged to have "stormed out of the office." See Affidavit of Barbara Whittington, paragraph 12, attached as Plaintiffs' Exhibit A.

Plaintiff asserts she made repeated complaints to Lloyds about the adjuster's incompetence. Plaintiffs contend Lloyds admitted the adjustor's inaction was delaying Plaintiff's claim, and the adjuster was removed from Plaintiffs' claim toward the end of August 2008. See Plaintiffs' Exhibit A, paragraph 17. In February of 2009, Defendant issued an undisputed cash value payment for some of Plaintiffs' properties that Plaintiffs and Defendant agreed needed re-roofing. This payment was in the amount of $168,243.55. See Affidavit of Mary Elizabeth Yagelski, Paragraph 5, attached as Plaintiffs' Exhibit C. The undisputed cash value payment is the amount Defendant agreed was owed on specific covered properties, after

applying a $40,000.00 deductible and 23.6% deduction for recoverable depreciation (also called "holdback"). Recoverable depreciation monies are refunded back to the insured within 180 days of completion of repair work. See Affidavit of Barbara Whittington, paragraph 27, attached as Plaintiffs' Exhibit B.

After receiving the undisputed funds from Defendant, DR Restoration began repairing those specific properties. See Affidavit of Mary Elizabeth Yagelski, Paragraph 6, attached as Plaintiffs' Exhibit C. At the request of Plaintiffs, DR Restoration provided Defendant with the invoices and supplements for the 39 roofs as they were repaired. Plaintiffs state this information was provided to Defendant so that the recoverable depreciation could be refunded to Plaintiffs as each roof was completed. This information was e-mailed to Shane Hoffman at Crawford Global Technical Services on March 3, 2009, March 5, 2009, March 17, 2009, March 19, 2009, March 20, 2009, March 23, 2009, March 24, 2009 and April 7, 2009. See Affidavit of Mary Elizabeth Yagelski, Paragraph 7, attached as Plaintiffs' Exhibit C. Copies of the emails are attaches as to Plaintiffs' Exhibit C. Plaintiffs contend Defendant delayed refunding the recoverable depreciation (holdback) to Plaintiffs, which made it impossible for Plaintiffs to mitigate their damages and continue with additional repairs to approximately 140 other insured properties that were damaged.

On March 12, 2009, Plaintiffs' contractor spoke on the telephone with Defendant's adjuster Shane Hoffman and asked when the recoverable depreciation (holdback) and supplements would be paid. Mr. Hoffman informed Plaintiff that Lloyds's would not issue checks for recoverable depreciation or supplements until all of the properties were completed. Mary Elizabeth Yagelski of DR Restoration e-mailed this information to Plaintiff Barbara Whittington on March 12, 2009. See Affidavit of Mary Elizabeth Yagelski, Paragraph 8,

attached as Plaintiffs' Exhibit C.

Approximately one year after the hail storm, Defendant issued another undisputed actual cash value, less depreciation (holdback) payment to Plaintiffs. This payment was the undisputed actual cash value for additional damaged properties that were not included in the initial undisputed payment. This second payment totaled $287,931.04 but did not include the recoverable depreciation from the initial 39 roofs that had already been repaired, utilizing the initial undisputed funds. See Affidavit of Mary Elizabeth Yagelski, Paragraph 9, attached as Plaintiffs' Exhibit C.

In May 2009, Defendant's adjuster, Shane Hoffman, provided comparisons between MKA, Crawford and D.R Restoration. The second actual cash value payment issued by Lloyds was based upon the initial figures of MKA, as reflected in the comparison provided by Shane Hoffman. See Affidavit of Mary Elizabeth Yagelski, paragraph 10, attached as Plaintiffs' Exhibit C. DR Restoration continued to make the repairs it could, using the undisputed payments. DR Restoration continued to provide invoices and supplements as the roof repairs were completed. Defendant advised Plaintiffs in May or June of 2009 that it was going to send Shane Hoffman to confirm the repairs before issuing payment for the holdback or any supplements. Plaintiffs claim that neither Shane Hoffman, nor anyone else on behalf of Defendant, has inspected the completed repairs or issued payment of any holdback or supplements. See Affidavit of Mary Elizabeth Yagelski, Paragraph 11, attached as Plaintiffs' Exhibit C.

Defendant mailed a letter to Plaintiffs on August 14, 2009 and advised Plaintiffs it "wished to reach an agreement on the loss under the Policy and in the absence of an agreement would avail itself of the Appraisal Provision." Plaintiffs contend they did not receive this letter

until August 18, 2009. The letter did not contain any scopes, notes regarding scopes, or summaries of the measurement for the loss.

On August 17, 2009, Defendant mailed a letter to Plaintiffs advising them that Defendant's agent MKA Associates' summary of loss measurements totaled $656,272.39 compared to the $1,883,0156.26 line-item estimate compiled by Plaintiffs' contractor, DR Restoration.  Plaintiffs argue Defendant's measurement of loss did not provide Plaintiffs with a complete scope of the damages as they had promised.  Plaintiffs admit Defendant advised Plaintiffs "silence in the face of Defendant's measurement of loss, despite follow-up calls on August 27 and August 31, 2009 were being interpreted as an impasse and appraisal was demanded."  Defendant also stated in the letter "if there is an appraisal, we will still retain our right to deny the claim." (emphasis added).

Plaintiffs argue that during this time frame they were not ignoring Defendant's telephone calls, but allege that Plaintiff Barbara Whittington was out of town, due to the imminent birth of her twin grandchildren. Plaintiffs claim the letter was ultimately retrieved on September 14, 2009.  See Affidavit of Plaintiff Barbara Whittington attached as Plaintiffs' Exhibit A.  Plaintiffs' Complaint was filed on September 10, 2009.  Therefore, Plaintiffs contend they did not receive notice of Defendant's demand for appraisal until four days after filing the instant case. See Affidavit of Plaintiff Barbara Whittington attached as Plaintiffs' Exhibit A.  See also signature for certified letter dated September 14, 2009 as Exhibit B.

Plaintiffs contend Defendant has prevented Plaintiffs from repairing their damaged property and mitigating further damage because it refuses to refund the undisputed recoverable depreciation (holdback) to Plaintiffs. Further, Plaintiffs argue these funds are monies Defendant agrees it owes to Plaintiffs, and Defendant's refusal to pay the holdback is further evidence of its

bad faith conduct. It is the contention of Plaintiffs that the lengthy delay and cost of the appraisal process would be an undue burden on Plaintiff. "It would take an appraiser approximately 8 months or longer to complete the appraisal process which would entail re-inspecting approximately 190 homes, obtaining photographs, preparing scopes of damages, comparing scope with defendant's appraiser, re-inspections, and then submission to an umpire. The costs to plaintiffs, without the expense of an umpire, would be approximately $78,480, not including photographs and other related expenses." See Affidavit of Wayne Schwartz attached as plaintiffs' Exhibit D.

**DISCUSSION**

Summary judgment is appropriate only if the pleadings, affidavits, depositions and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (e). A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. Id. At 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. Id.

On summary judgment, the court may not weigh the evidence, but may only review the evidence to determine whether there is a factual dispute. Oliver v. Farmers Ins. Group of Companies, 941 P. 2d 985, 987 (Okla. 1997). If reasonable people might differ on the conclusions to be drawn from the facts, the matter may not be summarily adjudicated. Id.

Defendant's claim that its demand for appraisal precludes suit is contrary to long-standing

Oklahoma law.  In 1925, the Oklahoma Supreme Court held that when an insurer denies liability, it waives the appraisal right of defendant.  Concordia Fire Ins. Co. v. Barkett, 236 P. 890 (1925). In 1965, the Oklahoma Supreme Court re-visited this issue in Fidelity-Phenix Fire Ins. Co. Of New York v. Penick, 401 P.2d 514 (Okla. 1965). The Court made it clear that an appraisal provision is not a condition precedent to a lawsuit by the insured, if the insurer has demanded the appraisal but reserved the right to litigate liability. In Fidelity-Phenix, the insurer made a demand that the insured comply with the appraisal process but, in the demand letter, reserved the question of liability for later decision.  The insurer stated in the last paragraph of the letter, "nor is this letter in any sense an admission of any liability on the part of the company to you either under the above policy of insurance or at all." Id at 518.  The Court concluded that "[s]uch reservation waived the clause as a condition precedent" to suit.  Id. at 520.

In the instant case, Defendant attempted to utilize a similar reservation. In the demands for appraisal, Defendant used identical language in its letters of August 14, 2009 and September 4, 2009 "if there is an appraisal, we will still retain our right to deny the claim." Accordingly, the Court finds Plaintiffs had no obligation to submit their loss to the appraisal process as a condition precedent to filing suit under the policy

In regard to Plaintiffs' claim for the breach of the duty of good faith and fair dealing. The Oklahoma Supreme Court, in Badillo v. Mid-Century Insurance Co., 121 P.3d 1080, 1094 (Okla. 2005), citing McCorkle v. Great Atlantic Ins. Co. 637 P.2d 583, 586 (Okla. 1981) upheld Oklahoma's long standing law regarding an insurer's bad faith.  The Court held "the essence of an action for breach of the duty of good faith and fair dealing is the insurer's unreasonable, bad-faith conduct...and if there is conflicting evidence from which reasonable inferences may be drawn regarding the reasonableness of the insurer's conduct, then what is reasonable is always a

question to be determined by the trier of fact by a consideration of the circumstances of each case." In an action for breach of the implied covenant of good faith and fair dealing with an insured, the entire course of conduct between the parties may be considered by the jury. Timmons v. Royal Globe Ins. Co. 653 P.2d 907 (Okl. 1982).

Plaintiffs claim Defendant was unreasonable in its investigation, evaluation and payment of policy benefits that are due and owing to the Plaintiffs. Specifically, Plaintiffs allege Defendant unreasonably refused to inspect all of the properties with Plaintiffs' contractor and failed to share their notes of measurements and scopes so that an agreed upon scope could be reached. Plaintiffs argue Defendant's adjuster initially inspected only 86 out of the 190 properties that sustained hail and wind damage. Of those 86 properties, Defendant determined the roofs needed to be replaced on 39 properties, however, Defendant never attempted to reach an agreed upon scope with Plaintiffs regarding covered damage for flashing, paint, shingles and metal gutters. Plaintiffs contend they made numerous attempts to reconcile the $1,226,742.00 repair cost difference. "To this date, Defendant still has not provided Plaintiffs with complete scopes. Defendant has unreasonably withheld Plaintiffs recoverable depreciation/holdback, preventing Plaintiffs from making the agreed upon repairs and mitigating their damages." The Court finds these are issues of material fact which should be properly determined by a jury.

Accordingly, Defendant's Motion for Summary is denied.

James H. Payne
United States District Judge
Northern District of Oklahoma